IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| TAX LIABILITIES OF: | ) | Case No. |
| | ) | |
| JOHN DOES, United States person(s) who | ) | |
| directly or indirectly had authority over any | ) | |
| combination of accounts held with Circle | ) | |
| Internet Financial, Inc., or its predecessors, | ) | |
| subsidiaries, divisions, affiliates, including | ) | |
| Poloniex LLC (collectively "Circle"), with | ) | |
| at least the equivalent of $20,000 in value of | ) | |
| transactions (regardless of type) in | ) | |
| cryptocurrency in any one year, for the period | ) | |
| beginning January 1, 2016, through | ) | |
| December 31, 2020. | ) | |

**BRIEF IN SUPPORT OF UNITED STATES OF AMERICA'S
PETITION FOR LEAVE TO SERVE JOHN DOE SUMMONS**

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6064 (v) / 202-514-5238 (f)
Edward.J.Murphy@usdoj.gov

## TABLE OF CONTENTS

I.     Introduction………………………………………………………………………..1

II.    Background………………………………………………………………………..2

    A.    "Cryptocurrency" Defined…………………………………………......……2

    B.    Tax Treatment of Cryptocurrency Transactions ……………………………...3

    C.    Information Regarding Cryptocurrency Transactions Held by Circle……………4

    D.    Grounds for the IRS's Belief That Virtual Currency Transactions Are Not Being Properly Reported…………………………………………….………6

        1.    The Lack of Third-Party Reporting to the IRS …………………………6

        2.    The John Doe Summons to Coinbase, Inc., and Its Aftermath……………7

        3.    MTRDB Search Results………………………………………………...8

        4.    Suspected Tax Non-Compliance by Circle Customers……………………9

III.    Law and Argument …………………………………………………....……10

    A.    Governing Law …………………………………………………..…10

    B.    Application of § 7609(f) …………………………………………12

        1.    The Summons Relates to the Investigation of an Ascertainable Class..…13

        2.    There Is a Reasonable Basis for Believing That the John Doe Class May Fail, or May Have Failed, to Comply with the Internal Revenue Laws……………………………………………………15

        3.    The Information Sought in the Summons Is Not Readily Available From Other Sources…………………………………………....…19

        4.    The Summons Is Narrowly Tailored to Information That Pertains to the Failure (or Potential Failure) of the Class to Comply with the Internal Revenue Laws……………………………………...…21

IV.    Conclusion…………………………………………………………………22

<u>BRIEF</u>

The United States of America submits this brief in support of its petition for an order approving the service of an Internal Revenue Service John Doe summons on Circle Internet Financial, Inc., or its predecessors, subsidiaries, divisions, affiliates, including Poloniex LLC (collectively "Circle"). A copy of the summons and summons attachment (listing the items requested) are filed herewith, as well as a proposed order, the Declaration of IRS Revenue Agent John Mark Peil (hereinafter "Declaration"), and supporting exhibits.

## I.       Introduction

The summons is in furtherance of the IRS's ongoing investigation to determine the identity and correct federal income tax liability of U.S. persons who have conducted transactions in cryptocurrency. *See* Declaration ¶¶ 3, 8, 30. Transactions in cryptocurrency have grown substantially in recent years, and the IRS is concerned that taxpayers are not properly reporting these transactions. The summons seeks account and transaction records from Circle that are expected to aid the IRS's investigation.

The summons is a so-called "John Doe" summons because it does not identify the persons with respect to whose liabilities the summons is issued. 26 U.S.C. § 7609(f). The government therefore must obtain court approval prior to serving the John Doe summons. *Id*. As discussed below, the criteria for court approval of a John Doe summons in § 7609(f) are met.

Pursuant to 26 U.S.C. § 7609(h)(2), the Court's determination of whether a John Doe summons may be served shall be made ex parte and shall be made solely on the petition and supporting affidavits. The pleadings filed in this proceeding will therefore not be served upon any person or entity, and no other filings are permitted from other persons or entities. The United States requests that the Court review the petition and supporting documents and that it enter the proposed order at the Court's earliest opportunity.

## II.     Background

The summons seeks account and transaction records from Circle regarding a group of its customers whose identities are not known to the IRS (the "John Does"). The group of John Does is defined on the summons as follows: United States person(s) who directly or indirectly had authority over any combination of accounts held with Circle or its predecessors, subsidiaries, divisions, or affiliates, including Poloniex LLC, with at least the equivalent of $20,000 in value of transactions (regardless of type) in cryptocurrency in any one year, for the period January 1, 2016, through December 31, 2020 (the "John Doe Class"). The six document requests are for account registration records, Know-Your-Customer due diligence, account-related correspondence, anti-money laundering exception reports, records of account activity, and records of account funding. Before addressing why a summons for the requested items directed at this John Doe Class meets the criteria in § 7609(f), this brief will first provide relevant background regarding (A) the definition of cryptocurrency, (B) its tax treatment, (C) the information regarding taxable cryptocurrency transactions that is in the possession of Circle, and (D) the grounds for the IRS's belief that these transactions are not being properly reported.

### A.     "Cryptocurrency" Defined

"Crypotocurrency" is one kind of "virtual currency." In Notice 2014-21, 2014-16 I.R.B. 938, 2014 WL 1224474 (Mar. 26, 2014), the IRS defined "virtual currency" as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value. It sometimes operates like "real" or "fiat" currency, *i.e.*, the coin and paper money of the United States or of any other country that is designated as legal tender, circulates, and is customarily used and accepted as a medium of exchange in the country of issuance. But virtual currency does not have legal tender status in any jurisdiction. When virtual currency has an equivalent value in real currency, or acts as a substitute for real currency, then it is referred to as

"convertible" virtual currency.

The summons at issue here solely concerns "cryptocurrency." Cryptocurrency is a type of virtual currency that utilizes cryptography to secure transactions that are digitally recorded on a distributed ledger (such as a blockchain). Distributed ledger technology uses independent digital systems to record, share, and synchronize transactions, the details of which are recorded in multiple places at the same time with no central data store or administration functionality. Units of cryptocurrency are generally referred to as coins or tokens. The most common cryptocurrency is Bitcoin, but there are many others.[1] The technological innovation, rapid growth, and decentralized nature of cryptocurrency have created new challenges for regulators, including the IRS. *See generally Report of the Attorney General's Cyber Digital Task Force: Cryptocurrency Enforcement Framework*, Oct. 1, 2020, https://www.justice.gov/ag/page/file/1326061/download [https://perma.cc/Q2XH-5LF9].

### B.      Tax Treatment of Cryptocurrency Transactions

The IRS's position in Notice 2014-21 is that convertible virtual currencies (including cryptocurrency) are considered property for tax purposes, and a taxpayer can have a gain or loss on the sale or exchange of a virtual currency. Thus, taxpayers who transact in virtual currencies may have related tax filing and reporting requirements under various provisions of the Internal Revenue Code, including 26 U.S.C. §§ 61, 451, and 1011.

Taxpayers often complete their virtual currency transactions through businesses known as digital currency exchanges, which allow users to buy and sell cryptocurrency in exchange for fiat currency or other virtual currency. Declaration ¶ 25. Depending on the details, these transactions may be taxable. *See id*. ¶ 32. Taxpayers must report income, gain, or loss from all taxable

---

[1] As of January 15, 2021, cryptocurrency tracking website www.coinmarketcap.com indicated that more than 8,000 separate cryptocurrencies existed.  https://coinmarketcap.com/all/views/all/ [https://perma.cc/6TEC-2W8B].

transactions involving virtual currency on their federal income tax returns for the year of the transaction, regardless of the amount or whether they received a payee statement or information return. *See Frequently Asked Questions on Virtual Currency Transactions* (Q&A-42), https://www.irs.gov/individuals/international-taxpayers/frequently-asked-questions-on-virtual-currency-transactions [https://perma.cc/634V-UW5P].

### C. Information Regarding Cryptocurrency Transactions Held by Circle

Circle is a Boston-based company that launched operations in 2013. It has offered customers access to several virtual currency exchanges, including Poloniex[2], Circle Trade, and Circle Invest. As of July 2019, Circle had served over 8 million customers with over $200 billion in trading volume of more than 60 types of virtual currency. Declaration ¶ 50 (citing https://web.archive.org/web/20191022123009/https://www.circle.com/en/). As of May 2018, the trading volume of Circle Trade was "about $4 billion in the past month." Telis Demos, *Banking & Finance: Fintech Firm Circle's Equity Valuation Soars*, Wall Street Journal, May 17, 2018.

Circle is regulated as a "money services business" (MSB), and more specifically as a "money transmitter." *See* 31 C.F.R. § 1010.100(ff) (defining "money services business"); § 1010.100(ff)(5) (defining "money transmitter" as one type of MSB). It is currently registered as an MSB with the Financial Crimes Enforcement Network (FinCEN)[3], and it has

---

[2] Circle sold the Poloniex cryptocurrency exchange in late 2019, and U.S.-based customers can no longer trade on that exchange. But the summons covers the period when Poloniex was owned by Circle, and the John Doe Class definition expressly includes Poloniex.

[3] FinCEN has issued guidance explaining that digital currency exchanges are generally to be regulated as money transmitters. *See* FinCEN Guidance No. FIN-2013-G001: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies (Mar. 18, 2013), *available at* https://www.fincen.gov/sites/default/files/shared/FIN-2013-G001.pdf [https://perma.cc/E9C8-YH3C]; FinCEN Guidance No. FIN-2019-G001: Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019), *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf [https://perma.cc/6BVK-AJVP].

acknowledged being licensed as a money transmitter at the state level as well. *See* https://www.fincen.gov/msb-registrant-search [https://perma.cc/VRC8-8UUC]; Circle's May 16, 2016 Letter to Comptroller of the Currency, https://www.occ.gov/topics/supervision-and-examination/responsible-innovation/comments/comment-circle-financial.pdf [https://perma.cc/A8PE-GSL9].

An MSB like Circle is required to maintain certain records. *See* 31 C.F.R. §§ 1010.410 (Records to be made and retained by financial institutions) and 1022.400 (making these recordkeeping requirements applicable to MSBs). Those records include, for transactions worth more than $3,000, the name and address of both the sender and recipient, the amount of the transaction, the date of the transaction, and other identifying information. § 1010.410(e); *see* Declaration ¶¶ 53-56. MSBs are also required to obtain and maintain certain customer identification information and transactional data for the purpose of combating money laundering. *See* 31 C.F.R. § 1022.210.

In keeping with these rules, Circle has historically required new customers to create an account by submitting certain identifying information, including the user's full legal name. Declaration ¶ 61. Each underlying Circle service has had additional requirements as well. *Id*. For example, Poloniex required new users to provide their full legal name, current address, a picture of an identification card, and a picture that includes their face and documents with the current date and the word "Poloniex" visible. *Id*. ¶ 62. Similar information was required to access other Circle services. *Id*. ¶¶ 63-64.

Based on the regulations applicable to Circle, as well as Circle's historical business practices, the IRS expects that, in response to the John Doe summons, Circle will be able to provide information about its customers' cryptocurrency transactions, which the IRS will then be able to use in conjunction with other publicly-available information to examine whether an

individual has complied with the internal revenue laws. Declaration ¶ 29.

### D. Grounds for the IRS's Belief That Virtual Currency Transactions Are Not Being Properly Reported

The IRS, in recent years, has become aware of significant tax compliance issues relating to the use of virtual currencies. Declaration ¶ 4. Of particular relevance here are the lack of third-party reporting to the IRS, the experience with the John Doe summons that was served on Coinbase, Inc., data from the Modernized Tax Return Data Base (MTRDB), and previous audits of Circle customers.

#### 1. The Lack of Third-Party Reporting to the IRS

Agent Peil searched and found no record that Circle provided information returns to the IRS relating to virtual currency transactions conducted by, or on behalf of, their customers. Declaration ¶ 66. This information gap is a concern for the IRS because, as Agent Peil's Declaration explains, cryptocurrency transactions can already be difficult to trace, with many having an inherent pseudo-anonymous aspect, making them especially attractive to taxpayers who may want to use them to hide taxable income. *Id*. ¶¶ 24, 35.

More generally, the IRS's experience is that tax noncompliance increases when there is less third-party information reporting, making the likelihood of underreporting significant. *Id*. ¶ 37; *see* Federal Tax Compliance Research: Tax Gap Estimates for Tax Years 2011–2013, IRS Publication 1415 (Rev. 9-2019), https://www.irs.gov/pub/irs-pdf/p1415.pdf, at 13 [https://perma.cc/2XM5-PDNH] (finding that the net misreporting percentage "for income amounts subject to little or no information reporting . . . is 55 percent."); *see also* Patricia Cohen, *If the I.R.S. Is Watching You, You'll Pay Up*, N.Y. Times, Jan. 5, 2016, at B1, https://www.nytimes.com/2016/01/05/business/economy/if-the-irs-is-watching-you-youll-pay-up.html [https://perma.cc/S9DK-QYU6]. Unfortunately, the lack of third-party reporting of cryptocurrency transactions is not confined to Circle, *See* Wendy Walker, *INSIGHT: The 5 Most*

*Common Tax Reportable Crypto Events*, Bloomberg Tax, Aug. 20, 2020, *available at*

https://news.bloombergtax.com/daily-tax-report/insight-the-5-most-common-tax-reportable-crypto-events [https://perma.cc/TH2J-5TT6] (noting that "a recent survey of crypto CPAs found that more than 35% of crypto investors do not receive Form 1099 information related to their crypto transactions"). As the Treasury Inspector General for Tax Administration has reported, "[t]he IRS cannot easily identify taxpayers with virtual currency transactions because of the lack of third-party information reporting that specifically identifies virtual currency transactions." *The Internal Revenue Service Can Improve Taxpayer Compliance for Virtual Currency Transactions*, TIGTA Ref. No. 2020-30-066 (Sept. 24, 2020),

https://www.treasury.gov/tigta/auditreports/2020reports/202030066fr.pdf

[https://perma.cc/83SZ-YJUK].

### 2. The John Doe Summons to Coinbase, Inc., and Its Aftermath

In November 2016, the U.S. District Court for the Northern District of California authorized service of a John Doe summons on Coinbase, Inc. ("Coinbase"), a U.S.-based cryptocurrency exchange, for information to be used in identifying taxpayers who conducted transactions in virtual currency. *See United States v. John Doe*, No. 3:16-cv-06658-JSC (N.D. Cal.). Coinbase was served with the summons but did not voluntarily comply with it. Declaration ¶ 10. The government then filed a petition to enforce the summons in March 2017, and after the IRS agreed to narrow the scope of the summons, the court granted in part and denied in part the enforcement petition. *See United States v. Coinbase, Inc.*, Case No.17-cv-01431-JSC, 2017 WL 5890052 (N.D. Cal. Nov. 28, 2017). Coinbase was ordered to produce documents for accounts with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive)[4] in

---

[4] There is no similar limitation in the summons to Circle because the terminology of Circle's exchanges differs. That is why the summons covers all transactions "regardless of type."

any one year for the period between 2013 and 2015. *Id*. at *8.

Since Coinbase complied with the John Doe summons, the IRS has continued to reach out to taxpayers regarding their reporting requirements, to conduct examinations, and to make criminal investigation referrals. Declaration ¶ 40. On July 26, 2019, the IRS announced that it had begun sending letters to virtual currency owners, advising them to pay back taxes and file amended returns. Declaration ¶ 14. By the end of August 2019, the IRS had issued more than 10,000 such letters to taxpayers who owned virtual currency. *Id*. Following the issuance of the letters, taxpayers filed amended returns reporting virtual currency transactions for tax years 2013 through 2018 that were not previously reported. *Id*. To date, these IRS letters have resulted in more than 1,000 amended returns and more than $13.1 million in assessments. *Id*. ¶ 40. The IRS has also opened audits of taxpayers identified by materials it received in response to the Coinbase John Doe summons, and it has received submissions through its voluntary disclosure practice as well. *Id*. Separately, the IRS has contacted taxpayers who have not filed returns reporting virtual currency by sending notices related to virtual currency. Those notices have already resulted in more than $11.9 million in assessments. *Id*. The IRS expects these numbers to increase as the investigations continue. More recently, the IRS sent letters to taxpayers who conducted transactions with foreign virtual currency exchanges and may have failed to properly report such transactions and associated income. *Id*. ¶ 41.

### 3. MTRDB Search Results

During the summons enforcement litigation against Coinbase, the IRS determined that for the years 2013-2015 only 800 to 900 taxpayers per year filed tax returns with a property description related to bitcoin or virtual currency, despite the fact that Coinbase alone had serviced more than 5.9 million customers and handled more than $6 billion in transactions during that time. This was strong evidence of likely large-scale underreporting of taxable transactions.

*See* 2017 WL 5890052, *1-2, 4-5; Declaration ¶ 38. The number of taxpayers filing returns with a property description related to bitcoin or virtual currency increased in 2016-2018, but the numbers still fall far short of what would be expected given the number of users, transactions, and value that the exchanges publicize occur on an annual basis. *See* Declaration ¶ 39.

### 4. Suspected Tax Non-Compliance by Circle Customers

Agent Peil explains in detail in his Declaration that he is personally aware of individual taxpayer audits where the IRS learned of previously unreported, and likely taxable, virtual currency transactions involving Circle. Declaration ¶¶ 67-72. The Declaration discusses seven individual taxpayers in this regard, identifying them as "Taxpayer 1" through "Taxpayer 7."

Taxpayer 1 filed tax returns that failed to report more than 700 transactions conducted through Poloniex. Declaration ¶ 67. The IRS served a summons to Circle for information relating to Taxpayer 1, and Circle's response to the summons included Taxpayer 1's name, address, phone number, email address, login history with IP addresses, pictures, driver's license image, chat name, account status, communications with Poloniex, and account balances by type of virtual currency. *Id.*

Taxpayers 2 and 3 are married. *Id.* ¶ 68. They filed joint tax returns for 2015 and 2016 that did not disclose any virtual currency transactions. *Id.* A subsequent IRS examination uncovered bank account statements indicating transactions with Circle. *Id.* In response to an IRS summons, Circle provided the IRS with information about a Circle account that had more than 40 unreported transactions as well as a Poloniex account that had more than 500 unreported transactions. *Id.*

Taxpayer 4 filed tax returns for 2015-17 reporting no virtual currency transactions. *Id.* ¶ 69. A summons to Circle uncovered three Circle accounts and three Poloniex accounts through which Taxpayer 4 had made more than 250 transactions. *Id.* Taxpayer 4 did not disclose any of

these transactions in an audit interview with an IRS revenue agent. *Id*.

Taxpayer 5 and Taxpayer 6 are married persons who both pleaded guilty to (i) conspiracy to distribute a controlled substance and (ii) money laundering-transportation of stolen property, for conduct occurring during 2015. *Id*. ¶ 71. They used an account at Circle to hold, and convert into U.S. dollars, payments received in bitcoin arising from the Taxpayers' illegal activities. *Id*. Again, Circle responded to an IRS summons with substantial transactional and identifying information, including more than 40 previously undisclosed transactions. *Id*.

Finally, the IRS identified Taxpayer 7 through data provided by Coinbase pursuant to the John Doe summons discussed above. *Id*. ¶ 72. After the IRS sent Taxpayer 7 one of the 10,000 letters that went out as a result of the Coinbase summons response, Taxpayer 7 filed amended tax returns for 2014, 2015, 2016 and 2017, reporting previously unreported virtual currency sales of more than $1,600,000, as well as additional tax on those sales. *Id*. Poloniex is one of the exchanges that Taxpayer 7 used to complete those transactions. *Id*.

Based on these individual examples, the IRS suspects that there may be many more Circle users who have failed to report their cryptocurrency transactions, and to pay their associated tax liabilities, in accordance with the internal revenue laws.

### III. Law and Argument

### A. Governing Law

The IRS is statutorily required to have its employees "proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax[.]" 26 U.S.C. § 7601(a). To this end, the IRS also has broad investigative powers "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person

in respect of any internal revenue tax, or collecting any such liability[.]" 26 U.S.C. § 7602(a). To fulfill these purposes, the IRS "is authorized" by statute:

> (1)  To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2)  To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3)  To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

*Id*. All told, "[t]he IRS has 'expansive information gathering authority' to determine tax liability under the Internal Revenue Code, including by issuance of summonses to taxpayers and third party record holders." *Sugarloaf Funding, LLC v. U.S. Dept. of Treas.*, 584 F.3d 340, 345 (1st Cir. 2009) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)).

When issuing an administrative summons to a third party, the IRS is generally required to give notice to the taxpayer. 26 U.S.C. § 7609(a)(1). The taxpayer then has the right to file a petition in court seeking to quash the summons. § 7609(b)(2)(A). However, the third-party notice rules do not apply to certain types of summonses, including a so-called "John Doe summons," § 7609(c), defined as a summons that "does not identify the person with respect to whose liability the summons is issued." § 7609(f). Instead, a John Doe summons "may be served only after a court proceeding" establishing the elements listed in § 7609(f). *Id*. This proceeding is necessarily ex parte because the point of a John Doe summons is to allow the IRS to obtain information when the identity of the taxpayer is unknown. *See* § 7609(h)(2) (stating that the court's determination under § 7609(f) "shall be made ex parte and shall be made solely on the petition and supporting affidavits").

11

The court in this ex parte proceeding effectively serves the same function as a taxpayer in a § 7609(b)(2)(A) petition to quash. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 317 (1985) ("As a substitute for the procedures of §§ 7609(a) and (b), Congress enacted § 7609(f)[.]"); *United States v. Gertner*, 65 F.3d 963, 965 n.1 (1st Cir. 1995) ("[T]he court in effect 'takes the place of the affected taxpayer' who, being unnamed, cannot herself be expected to know about—let alone to oppose—the summons even if it is irregular." (quoting *Tiffany Fine Arts*, 469 U.S. at 321)). "Congress did not intend to impose stringent restrictions on the Service's investigatory function but merely sought to prevent the indiscriminate exercise of the John Doe summons power." *United States v. Ernst & Whinney*, 750 F.2d 516, 519-20 (6th Cir. 1984) (quotation omitted).

Section 7609(f) provides that the IRS may not serve a John Doe summons until after a court proceeding in which the government establishes the following three numbered elements:

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

Additionally, as of 2019, § 7609(f)'s new flush language requires that the summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph."

### B.    Application of § 7609(f)

The summons at issue here meets all three of the numbered criteria in § 7609(f) as well as the new "narrowly tailored" requirement.

### 1. The Summons Relates to the Investigation of an Ascertainable Class

The first of the three numbered requirements in § 7609(f) is that "the summons relates to the investigation of a particular person or ascertainable group or class of persons." § 7609(f)(1). This first prong is met because the John Doe Class is particularized from the general public and Circle has the information necessary to ascertain whether its customers are members of the class.

Again, the face of the summons defines the John Doe Class this way: "United States person(s), who directly or indirectly had authority over any combination of accounts held with Circle Internet Financial, Inc., or its predecessors, subsidiaries, divisions, or affiliates, including Poloniex LLC (collectively 'Circle') with at least the equivalent of $20,000 in value of transactions (regardless of type) in cryptocurrency in any one year, for the period January 1, 2016 through December 31, 2020." This class is ascertainable because it is limited in at least four ways. First, it is limited to Circle account holders. Second, it is limited to United States persons.[5] Third, it is limited to those account holders whose transactions were worth at least $20,000 in a year. Fourth, it is limited to the five-year time period of 2016-2020.

The John Doe Class identified in the summons is "ascertainable" because courts have repeatedly found § 7609(f)(1) to be satisfied where a summons identifies a particular group of taxpayers in a similar manner. For example, this test was passed where a summons "squarely particularize[d] the individuals sought from the general public" by identifying the class as

---

[5] The term 'United States person' means—
    (A) a citizen or resident of the United States,
    (B) a domestic partnership,
    (C) a domestic corporation,
    (D) any estate (other than a foreign estate, within the meaning of paragraph (31)), and
    (E) any trust if—
        (i) a court within the United States is able to exercise primary supervision over the administration of the trust, and
        (ii) one or more United States persons have the authority to control all substantial decisions of the trust.
26 U.S.C. § 7701(a)(30).

California residents who, between 2005 and 2010, were involved in certain property transfers for little or no consideration. *See In re Tax Liab. of Does*, No. 2:10-mc-00130-MCE-EFB, 2011 WL 6302284, at *2 (E.D. Cal. Dec. 15, 2011). Likewise, the IRS satisfied the "ascertainable group" standard where a summons concerned U.S. taxpayers who, as agents for subsidiaries of a certain company, sold credit insurance policies reinsured with entities in the Turks and Caicos Islands. *See In re Tax Liab. of Does*, No. 03-22793-CIV, 2003 WL 22953182, at *1 (S.D. Fla. Oct. 30, 2003) ("*American Bankers Insurance Group*"); *see also Matter of Does*, Case No. CV-13-3393 YGR, 2013 WL 5503135 (N.D. Cal. Aug. 29, 2013) (approving John Doe class of U.S. taxpayers who had accounts with CIBC First Caribbean International Bank Limited through correspondent accounts at Wells Fargo Bank, N.A., during 2004-2012); *In Matter of Tax Liabilities of Does*, Civ. No. 3:96-CV-25(DF), 1996 WL 196633, at *1 (M.D. Ga. Feb. 5, 1996) ("As required by 26 U.S.C. § 7609(f)(1), the summons relates to the investigation of an ascertainable group or class of persons, that is, individuals, businesses, corporations, partnerships, joint ventures, and companies within the State of Georgia that received payments from The Loef Company for the sale of recyclable materials, (also referred to as scrap metal), including commissions, for the calendar years 1992, 1993 and 1994.").

Moreover, as discussed in Part II.C above, Circle should be able to ascertain from its records which of its virtual currency exchange customers were U.S persons, and who among them engaged in the $20,000 floor transactional levels[6] during the years specified in the summons, based on the information that we know they collect on their customers. The

---

[6] At least one case has addressed whether a class is "ascertainable" where the class is defined based on a dollar-value threshold but the summoned party "does not record members' transactions in terms of monetary value, and is unaware of the monetary value applied to the transactions by the members." *United States v. Coble*, Civil No. 82-71-B, 1982 WL 1661 at *5 (S.D. Iowa June 2, 1982). But we have reason to believe that this dollar-value information is available to Circle such that the class can be ascertained and the summons readily complied with.

availability of this information to Circle means that the John Doe Class is an "ascertainable group or class of persons" and that § 7609(f)(1) is satisfied.

### 2. There Is a Reasonable Basis for Believing That the John Doe Class May Fail, or May Have Failed, to Comply with the Internal Revenue Laws

The second numbered element of § 7609(f) that the government must establish for the Court to approve service of the summons relating to the John Doe Class is that "there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." § 7609(f)(2). There is a reasonable basis for believing that members of the John Doe Class may fail (or may have already failed) to report, or to pay tax associated with, cryptocurrency transactions. This belief is based upon the information discussed in Part II.D, above: the lack of third-party reporting to the IRS by Circle regarding its customers' transactions; the IRS's experience with the Coinbase John Doe summons and its aftermath; the MTRDB search results showing likely large-scale underreporting of taxable cryptocurrency transactions; and Agent Peil's personal experience with audits of Circle users.

To meet the "reasonable basis" prong of § 7609(f)(2), the government need only show that a transaction has occurred that is "of such a nature as to be reasonabl[y] suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported." H.R. Rep. No. 94-658 at 311 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3208; *see, e.g.*, *United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir. 1994) (clients' payment for legal services with large amounts of cash provided reasonable basis for John Doe summons). When enacting Section 7609(f), Congress did "not intend to impose an undue burden on the [IRS] in connection with obtaining a court authorization to serve this type of summons." H.R. Rep. No. 94-658 at 311, *reprinted in* 1976 U.S.C.C.A.N. at 3207. Rather, Congress sought to ensure that the IRS would have "a specific situation to present in the court," instead of using the summonses

to engage in a "possible 'fishing expedition.'" *Id.*; *see also In re Tax Liabs. of Does*, 688 F.2d 144, 149 (2d Cir. 1982) (Section 7609(f) was "concerned only with . . . preclud[ing] the IRS from using [John Doe] summonses to engage in possible 'fishing expeditions.'" (quoting H.R. Rep. No. 94-658 at 311)). The government need not "produce conclusive evidence of an actual tax violation as a prerequisite to obtaining a John Doe summons." *Matter of Does*, 671 F.2d 977, 980 (6th Cir. 1982) (per curiam) ("*Columbus Trade Exchange*"). The point of the statute is merely "to prevent the Service from exercising its summons power in an arbitrary or quixotic manner." *Id.*; *see also Byers v. United States Internal Revenue Service*, 963 F.3d 548, 553 (6th Cir. 2020) ("when the government seeks information about an unnamed person from a third party, it must show the district court that it has some reason to believe that this unnamed person violated or may violate the law.").

Prior experience with similar transactions involving similar parties is a reasonable basis under § 7609(f)(2). For example, *Columbus Trade Exchange* is one of a group of cases from the early 1980s involving John Doe summonses that the IRS sought approval to serve on barter exchanges. Those barter exchanges are analogous to virtual currency exchanges insofar as the IRS's experience showed that the barter exchange customers, whose identities were unknown, were likely to be underreporting the tax on their transactions. The Sixth Circuit held that the IRS's "past experience with this problem is a 'reasonable basis' for its decision to investigate the returns of Columbus Exchange members," 671 F.2d at 980, and other courts made similar rulings. *See United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302, 306 (3d Cir. 1981) (finding, based on IRS agent's testimony, that "barter transactions such as those arranged by The Exchange are inherently susceptible to tax error since no cash is involved and the only records of the members' credits are kept by The Exchange, which allegedly does not provide members any information regarding their trade accounts. Such circumstances provide a sufficient basis for the

Internal Revenue Service's action."); *United States v. Island Trade Exchange, Inc.*, 535 F. Supp. 993, 996-97 (E.D.N.Y. 1982) (approving John Doe summons to barter exchange and finding "reasonable basis" requirement in § 7609(f)(2) met based on IRS agent's declaration that "prior examinations of bartering exchanges and their members by the Internal Revenue Service revealed high levels of omitted or improperly reported income"). Equally here, the IRS's past experience with individual audits of Circle customers, the Coinbase John Doe summons, and other situations in which there is a lack of third-party reporting all strongly suggest that there is a reasonable basis for the summons in this case.

As in the barter-exchange cases, all of the cases arising from the IRS's Offshore Credit Card Project have found a "reasonable basis" for suspecting non-compliance based on the IRS's experience with undisclosed foreign accounts, even in the absence of audits involving the summoned parties, because individuals using credit cards to repatriate funds from offshore bank accounts are likely to be engaged in tax evasion. *See, e.g.*, *In re John Does*, No. 1:00-CV-3919, 2000 WL 34538137 (S.D. Fla. Oct. 30, 2000) (*American Express & MasterCard International, Inc.*); *In re John Does*, No. CV-02-0049-MISC-PJH (N.D. Cal. 2002) (*VISA International*); *In re John Does*, No. 02-22404 CIV-UNGARO-BENAGES (S.D. Fla. 2002) (*MasterCard International, Inc.*); *In re John Does*, No. 03-22177 CIV-Martinez (S.D. Fla. 2003) (*Credomatic of Florida Inc.*); *In re John Does*, No. 04-F-1548 (OES) (D. Col. 2004) (*First Data Corporation*); *In re John Does*, No. 04-21986-CIV-UNGARO-BENAGES (S.D. Fla. 2004) (*TecniCard, Inc.*); and *In re John Does*, No. 4:04-cv-94-1 (CDL) (M.D. Ga. 2004) (*Total Systems Services, Inc.*).

This Court has also approved service of a John Doe summons for similar reasons. *See In the Matter of the Tax Liabilities of John Does*, M.B.D. No. 84-133, 1984 WL 1109 at *1 (D. Mass. Oct. 2. 1984) (*First National Bank of Boston*). In that case, the court had previously

approved a John Doe summons to First National Bank of Boston that sought records of account holders who had received more than $100,000 in interest from certificates of deposit. The IRS had a reasonable basis for the summons because it had obtained the same information from a different bank in Buffalo, after which audits of those account holders "revealed that 107 individual holders out of 115 examined had underreported interest income earned on the certificates." *Id*.

Here, the evidence that the IRS has developed to date suggests the possibility that the correct tax liability with respect to cryptocurrency transactions conducted through Circle's virtual currency exchanges may not have been properly reported. Declaration ¶ 42. Again, the IRS knows that when third-party reporting is lacking the incidence of tax non-compliance increases greatly. That concern is a valid one where Circle, like many other virtual currency exchanges, does not issue Forms 1099 or otherwise engage in third-party transactional reporting to the IRS. Additionally, as in the barter-exchange cases, the IRS's past experience with cryptocurrency, especially with respect to the Coinbase John Doe summons, indicates a likelihood of non-compliance by Circle customers. This suspicion is bolstered by the MTRDB search results. Moroever, Agent Peil is personally aware of several instances where IRS audits have uncovered previously unreported (and likely taxable) transactions involving Circle users. *See* Declaration ¶¶ 67-72, 92, 94. Given all that, the IRS does not have a mere suspicion that the John Doe Class includes taxpayers who are not complying with the law; rather, it knows that the class in the past included such violators, and very likely includes others.

This evidence goes far beyond being the kind of "conclusory" declaration that the First Circuit has found to be insufficient to satisfy § 7609(f)(2). *See United States v. Gertner*, 65 F.3d 963, 972 (1st Cir. 1995). It strongly suggests that there has been, and continues to be, failure by certain taxpayers to comply with the internal revenue laws in reporting income from

cryptocurrency transactions. The "reasonable basis" prong of § 7609(f)(2) is therefore satisfied.

### 3. The Information Sought in the Summons Is Not Readily Available From Other Sources

The third numbered requirement of § 7609(f) is "the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources." This third prong of the test is met because the information sought in the summons to Circle is not readily available from other sources. As noted above, there is no third-party reporting by Circle to the IRS regarding the cryptocurrency transactions that are conducted on its exchanges. Declaration ¶¶ 37, 66. The IRS also has reason to believe that a significant portion of such transactions are not being properly reported by the taxpayers themselves either, but the IRS is presently unable to audit such taxpayers because their identities are unknown. With these limitations, the only repository of the information sought by the summons that is readily available to the IRS is Circle. Declaration ¶ 95. *See American Bankers Insurance Group*, 2003 WL 22953182, at *1 (finding § 7609(f)(3) met because "information sought by the IRS to continue their investigation is not readily available through a means other than from [the summoned party] itself").

Where, as here, the IRS is unable to identify the members of the John Doe Class, and one of the principal purposes of the summons is to discover the class members' identities, courts have repeatedly found the § 7609(f)(3) prong of the test to be satisfied. To give one common example, courts have approved summonses where the identities of the persons to be investigated are not readily available but are known to foreign institutions. *See In re Tax Liabs. of Does*, No. 11-cv-01686-PJH, Dkt. No. 10 (N.D. Cal. Apr. 7, 2011) (authorizing John Doe summons to HSBC Bank USA, N.A. seeking financial account records establishing the identities of U.S. taxpayers with interests in HSBC's Indian bank accounts); *MasterCard International, Inc.*, 2002

WL 32879613, at *1 (authorizing service of a John Doe summons seeking the identity of U.S.

taxpayers who held certain credit card accounts with ties to foreign banks); *American Express &*

*MasterCard International, Inc.*, 2000 WL 34538137, at *1 (identities of taxpayers not readily

available except from American Express and MasterCard International, Inc., who possessed

credit card information for cards issued by offshore banks).

Even if it were theoretically possible for the IRS to obtain some of the information sought

in the summons from a labor-intensive review of its own files, that would not prevent

§ 7609(f)(3) from being satisfied.[7] Courts take a "practical" approach when information "cannot

without unreasonable burden, expense and unwarranted delay be retrieved from the files of the

Internal Revenue Service." *United States v. Reprints, Inc.*, 43 A.F.T.R.2d 79-463, 1978 WL 1238

(N.D. Ga. Nov. 18, 1978); *see also United States v. John G. Mutschler & Assocs., Inc.*, 734 F.2d

363, 367-68 (8th Cir. 1984) (taking "practical approach to IRS accessibility" in declining to

order "manual search of 18,000 opinion letter applications" to identify those prepared by

summoned party, calling that "an unreasonable and imprecise method" of locating information);

*United States v. Berkowitz*, 488 F.2d 1235, 1236 (3d Cir. 1973) (per curiam) ("To require the

Internal Revenue Service to review individually the millions of forms filed in 1971" to locate

those sought by summons "is so obviously burdensome as to make the procedure prohibitive"

and concluding "from a practical standpoint those returns would not be readily available to the

government").

The only entities possessing information relating to virtual currency transactions that

identify the persons involved in the transactions, and that hold material relating to the

transactions, are the exchangers and any intermediaries. Therefore, it is logical to summon Circle

---

[7] *Cf. Sugarloaf Funding*, 584 F.3d at 350 (holding, in summons enforcement proceeding, that "the IRS is entitled to obtain relevant records from third parties to compare for accuracy any records obtained from the taxpayer").

for this identifying and transactional information regarding Circle's customers, which is not readily available from any other source.

4. **The Summons Is Narrowly Tailored to Information That Pertains to the Failure (or Potential Failure) of the Class to Comply with the Internal Revenue Laws**

An additional requirement that Congress added to § 7609(f) in 2019 is that a John Doe summons must be "narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph." This new narrow-tailoring requirement is met because the summons requests are specifically directed at information that will shed light on the potential non-compliance that the IRS is concerned about—non-reporting of cryptocurrency transactions and non-payment of associated tax—as well as the identities of those taxpayers who may not be in compliance. As mentioned above, this includes potential non-compliance with several provisions of the Internal Revenue Code, such as 26 U.S.C. §§ 61, 451, and 1011.

Congress added the new flush language at the end of § 7609(f) as part of the Taxpayer First Act, Pub. L. No. 116-25, § 1204(a), 133 Stat. 988 (2019), and it became effective on August 16, 2019. Congress's intent was to ensure that "the information sought in the summons [is] at least potentially relevant to the tax liability of an ascertainable group," and that the summons is not used "for the purposes of a fishing expedition." H.R. Rep No. 116-39, at 41 (2019). The added text "is not intended to change the *Powell* standard [*i.e.*, the showing the IRS must make in support of summons enforcement, *see United States v. Powell*, 379 U.S. 48 (1964)] or otherwise affect the IRS's burden of proof." *Id.* at 42; *see also* Joint Committee on Taxation, *Description of H.R. 1957, the "Taxpayer First Act of 2019,"* at 15 (2019), available at https://www.jct.gov/CMSPages/GetFile.aspx?guid=673878f4-0d0f-4304-a14c-c9740276676a

[https://perma.cc/49QV-GWV6].

This new statutory requirement is satisfied here. Agent Peil's Declaration explains in detail the direct connection between each of the six items requested in the summons attachment and the IRS's investigation concerning non-compliance with the internal revenue laws. *See* Declaration ¶¶ 77-90. Those six document requests fit within two broad categories. *Id*. ¶ 77. The first category of requests is "directed at adequately identifying the John Doe class members so that transactional data can reasonably be associated with a particular person. *Id*. ¶ 78. For example, Request #1 on the summons attachment, seeking account registration records, will assist the IRS in this process. *See id*. ¶¶ 81-85. The second category of requests is "directed at obtaining transactional information that may permit the Service to evaluate whether a particular, previously unknown taxpayer identified through the summons has fully complied with the internal revenue laws with respect to the treatment of cryptocurrency." *Id*. ¶ 79. For example, Request #5 on the summons attachment seeks all records of account activity, including transaction logs or other records that reflect the particulars of a transaction such as the date, the amount, the transaction type, the account post-transaction balance, and requests or instructions to send or receive virtual currency. These records should contain the information necessary to determine the correct federal tax liability of applicable Circle users. *Id*. ¶ 89.

As these and other more detailed explanations in Agent Peil's Declaration show, each of the items sought by the summons is specifically targeted toward obtaining information that may further the IRS's investigation of the John Doe Class and its members' failure (or potential failure) to comply with the internal revenue laws. The narrow-tailoring requirement of the new flush language in § 7609(f) is therefore satisfied.

## IV. Conclusion

Based on the foregoing, the government has met all of the requirements for a John Doe

summons in § 7609(f). The United States requests that its petition be granted and that the Court enter the proposed order approving the IRS to serve the John Doe summons on Circle.

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6064 (v) / 202-514-5238 (f)
Edward.J.Murphy@usdoj.gov